******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* BRIAN MANSFIELD
## (AC 41587)

Alvord, Cradle and Sullivan, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of breach of the peace in the second degree and assault of public safety personnel, the defendant appealed to this court. On election day on November 8, 2016, the defendant went to the polling place located at the Bethel Town Hall where he proceeded to remove papers from a dry erase board and throw them on the ground and erase information written on the board. He entered the part of the town hall where voting was taking place and was given a ballot, which he then refused to return. Volunteers asked a police officer, P, who was providing security, for assistance. The defendant, who continued to refuse to return the ballot, then placed the ballot in his pants and dared P to retrieve the ballot from his pants. At this point, the volunteers allowed the defendant to keep the ballot and the defendant exited the area, knocking over a basket of stickers as he did so. He then took several boxes of cookies from Girl Scouts who were selling cookies outside the voting location and, when told by P to return the boxes, threw them aggressively onto the table. P then began to escort the defendant out of the town hall and, as they were walking, the defendant spit on a picture hanging on the wall. The next day, two police officers, B and C, went to the defendant's home to serve a summons for breach of the peace in violation of the applicable statute (§ 53a-181 (a) (1)), based on the defendant's conduct the day before. C handed the summons to the defendant and asked that he sign it. The defendant crumpled the summons, threw it on the ground, and then spat in C's face, at which point the defendant was arrested and charged with assault of public safety personnel. *Held*:

1. The defendant's challenges to his conviction of breach of the peace in violation of § 53a-181 (a) (1) were unavailing:

a. The evidence was sufficient to support the defendant's conviction of breach of the peace in the second degree, as the jury reasonably could have concluded that the cumulative force of the evidence established that the defendant's conduct on November 8, 2016, was physically tumultuous and contained the requisite level of physicality.

b. This court found unavailing the defendant's claim that § 53a-181 (a) (1) was unconstitutionally vague as applied to him, as a reasonable person would anticipate that § 53a-181 (a) (1) would apply to the defendant's conduct on November 8, 2016.

c. The defendant could not prevail on his unpreserved claim that the trial court improperly instructed the jury regarding the definition of "tumultuous behavior" in § 53a-181 (a) (1), as the defendant implicitly waived his claim of instructional error; defense counsel had an opportunity to review the jury charge language, acquiesced in the use of the instructional language at issue, and stated that he had no objection to the removal of the language now challenged by the defendant.

d. The defendant could not prevail on his claim that the trial court committed plain error in its instructions to the jury, which was based on his assertion that the court's decision to remove certain language from the conduct element of § 53-181 (a) (1) may have led the jury to convict him for bad manners, rather than for conduct that portended imminent physical violence, as the court clearly instructed the jury that the defendant's conduct must be more than mere bad manners.

2. The defendant could not prevail on his claim that the evidence was insufficient to support his conviction of assault of public safety personnel because the state failed to prove that C was acting in the performance of his official duties; C was on duty and wearing his uniform on November 9, 2016, and, on the basis of that fact, the jury reasonably could have concluded that his decision to accompany B to the home of the defendant and to issue the summons was made in his official capacity as a police officer and, therefore, C was acting within the scope of his employment.

5. The defendant could not prevail on his unpreserved claim that the trial

court failed to adequately instruct the jury regarding the law governing police discretion to issue and serve a summons on an individual who has not been arrested: the defendant implicitly waived his claim that the court's instructions were improper, as defense counsel had an opportunity to review the jury instructions and did not object to them, he agreed that the instructions given were sufficient and, after the jury sent a note requesting clarification, he agreed with the court's decision not to further charge the jury on that issue, the court having concluded that the issue was one that the jurors had to deliberate on and reach themselves; moreover, the defendant could not prevail on his claim that the court committed plain error in declining to answer the jury's note requesting clarification as to when an officer's duties end, as there was no reasonable possibility that the jury would have concluded that C was not performing his lawful duty and acquitted the defendant because whether a police officer has lawful authority to conduct an arrest or serve a summons was irrelevant to the question of whether C was acting in the performance of his official duties.

Argued October 6—officially released December 22, 2020

*Procedural History*

Substitute informations charging the defendant, in the first case, with one count of the crime of breach of the peace in the second degree and two counts of the crime of littering, and, in the second case, with the crime of assault of public safety personnel, brought to the Superior Court in the judicial district of Danbury, geographical area number three, where the court, *Russo, J.*, granted the state's motion for joinder; thereafter, the charges of breach of the peace in the second degree and assault of public safety personnel were tried to the jury before *Russo, J.*; verdicts of guilty; subsequently, the charges of littering were tried to the court; judgment of not guilty; thereafter, the court rendered judgments of guilty in accordance with the verdicts, from which the defendant appealed to this court. *Affirmed.*

*Timothy H. Everett*, assigned counsel, with whom, on the brief, were *Alexis C. Coudert* and *Jeremy A. Weyman*, certified legal interns, for the appellant (defendant).

*Jonathan M. Sousa*, deputy assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky*, state's attorney, and *Warren Murray*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Brian Mansfield, appeals from the judgments of conviction, rendered after a jury trial, of the crimes of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1) and assault of public safety personnel in violation of General Statutes § 53a-167c (a) (5). On appeal, with regard to his conviction of breach of the peace, the defendant "challenges the sufficiency of the state's evidence to prove the theory of liability for which he was prosecuted: that he . . . engaged in tumultuous behavior"; (emphasis omitted); claims that "[t]he prosecution's theory of criminal liability rendered § 53a-181 (a) (1) unconstitutionally vague as applied," and that the trial court's instruction on the definition of "tumultuous behavior" misled the jury. With regard to his conviction of assault of public safety personnel, the defendant claims that "[t]he state offered insufficient evidence to prove that [the] [o]fficer . . . was acting lawfully in the performance of his official duties," and that "[t]he trial court did not respond adequately to the jury's request . . . to be instructed on the law governing police discretion to issue and serve a summons [on] an individual who has not been arrested first." We affirm the judgments of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to the defendant's appeal. On the evening of November 8, 2016—election day—Officer Leonard Penna of the Newtown Police Department was working a private duty job providing security at the Bethel Town Hall (town hall) from 6 to 10 p.m. While Officer Penna was working, the defendant entered the town hall and approached a dry erase board in the lobby. The defendant removed several documents from the board and threw them on the ground, and erased the information that had been written on the board. The defendant then entered the gymnasium inside of the town hall where voting was taking place, and the volunteers working the polling place gave the defendant a ballot. The volunteers requested that the defendant return the ballot, and he refused. The volunteers then called to Officer Penna for assistance. After Officer Penna entered the gymnasium, the defendant continued to refuse to return the ballot and put the ballot in his pants. Officer Penna requested that the defendant return the ballot to the volunteers, and the defendant responded: "I bet you would like to go retrieve that out of my pants." After the defendant made this remark, the volunteers allowed him to keep the ballot. As the defendant exited the gymnasium, he knocked over a basket of "I Voted Today" stickers.

Outside of the gymnasium, a group of Girl Scouts had set up a table where they were selling cookies. After exiting the gymnasium, the defendant took several boxes of cookies from the Girl Scouts and placed them

inside of the bag that he was carrying. One of the girls began to yell at the defendant, and Officer Penna exited the gymnasium to respond to the commotion. Officer Penna told the defendant to return the boxes of cookies that he had taken, and the defendant responded by throwing the boxes onto the table in an aggressive manner. Officer Penna then began to escort the defendant to the exit of the town hall, and, as they walked down the hallway, the defendant spat on a picture hanging on the wall. Officer Penna then contacted the Bethel Police Department (department). Officers Jason Broad and Courtney Whaley of the department responded to Officer Penna's call. Officer Whaley arrived first, and she spoke with the defendant and attempted to calm him down. Officer Broad arrived shortly after Officer Whaley, and he assisted Officer Penna in helping the defendant get into his vehicle while Officer Whaley spoke with Lisa Berg, the Bethel Town Clerk. The defendant left the town hall in his vehicle, and he was not issued a summons that night.

The following day, November 9, 2016, Officer Broad was directed to complete a summons and issue it to the defendant at his home. The summons was for breach of the peace, based on the defendant's conduct the prior night. Officer Broad was not on duty on November 9, 2016, but he was directed to complete and issue the summons because he was the investigating officer. Because Officer Broad was off duty, he was not in uniform. For this reason, Sergeant James Christos of the department, who was on duty and in uniform, decided that he should accompany Officer Broad to the home of the defendant and issue the summons himself. Upon arrival at the defendant's home, Officer Broad and Sergeant Christos knocked on the door, and the defendant answered. Sergeant Christos handed the defendant a copy of the summons and requested that he sign it. The defendant crumpled the copy of the summons, threw it on the ground, and then spat in Sergeant Christos' face. The defendant attempted to close the door on them, but Officer Broad and Sergeant Christos stopped him and took him into custody. The defendant subsequently was charged with assault of a public safety officer.

Following a jury trial, the defendant was convicted of breach of the peace in the second degree, based on his conduct on the night of November 8, 2016, and assault of public safety personnel, based on his conduct on November 9, 2016. It is from these judgments of conviction that the defendant appeals. Additional facts and procedural history will be set forth as necessary.

I

The defendant challenges his conviction of breach of the peace in the second degree on the following grounds: the state failed to produce sufficient evidence to prove the theory of liability under which the defen-

dant was prosecuted, the state's theory of criminal liability rendered the breach of the peace in the second degree statute unconstitutionally vague as it was applied, and the trial court misled the jury by providing an inappropriate instruction with regard to the definition of "tumultuous behavior." We address each claim in turn.

A

First, we address the defendant's claim that the state failed to produce sufficient evidence to prove the theory of liability under which he was prosecuted. Specifically, the defendant claims that "[t]he meaning of the term 'tumultuous' is dependent on the terms that surround it[1] . . . [and that] the state chose not to include any of those terms in the information, offered no evidence of physicality or imminent violence to satisfy the conduct element of the . . . statute, and did not request that the trial court instruct the jury that it had to find an element of physicality in order to convict." (Footnote added.) The defendant further claims that the state's "global argument"—that the defendant is guilty "based on [his] 'collective behavior' " on the night of November 8, 2016—inappropriately frames the requirements of § 53a-181 (a) (1). We disagree.

We begin by setting forth the applicable standard of review. "In reviewing the question of whether the evidence was sufficient to sustain the conviction, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Allen*, 289 Conn. 550, 555–56, 958 A.2d 1214 (2008). Review of a claim of insufficient evidence "must necessarily begin with the elements that the charged statute requires to be proved. Such a review involves statutory construction, which is a question of law. Our review, therefore, is plenary." *State* v. *Carolina*, 143 Conn. App. 438, 443, 69 A.3d 341, cert. denied, 310 Conn. 904, 75 A.3d 31 (2013).

The statute at issue is § 53a-181 (a) (1), and the defendant claims that the state failed to produce evidence sufficient to satisfy that statute's conduct element, which requires that the person engage "in fighting or in violent, tumultuous or threatening behavior in a public place . . . ." In interpreting this requirement, our Supreme Court has noted that this court has held that violent, tumultuous or threatening behavior means

"conduct which actually involves physical violence or portends imminent physical violence"; (internal quotation marks omitted) *State* v. *Indrisano*, 228 Conn. 795, 811, 640 A.2d 986 (1994), citing *State* v. *Lo Sacco*, 12 Conn. App. 481, 491, 531 A.2d 184, cert. denied, 205 Conn. 814, 533 A.2d 568 (1987); and our Supreme Court has held that "the terms 'fighting' and 'violent' lend an aspect of physicality to the more nebulous terms 'tumultuous' and 'threatening.' Thus . . . subdivision (1) of § 53a-182 (a) prohibits *physical* fighting, and *physically* violent, threatening or tumultuous behavior." (Emphasis in original.) *State* v. *Szymkiewicz*, 237 Conn. 613, 619, 678 A.2d 473 (1996).[2]

The defendant's argument—that the state failed to satisfy the conduct element of the breach of the peace statute and that the state's "global argument" inappropriately framed the requirements of § 53a-181 (a) (1)— is unavailing. Although the defendant is correct in stating that a conviction of breach of the peace in the second degree requires conduct with an element of physicality, we disagree with his claim that the evidence relative to his conduct on the night of November 8, 2016 "is insufficient to sustain the jury's verdict." To the contrary, there is ample evidence in the record from which the jury reasonably could have concluded that the defendant's conduct on the night in question contained the requisite level of physicality to constitute a breach of the peace. On election night, the defendant entered a polling place, wherein he removed and threw documents, and erased information from a white board; refused to return a ballot; put the ballot in his pants and told the police officer that he "bet [the officer] would like to go retrieve that out of [his] pants"; knocked over a basket of "I Voted Today" stickers; took boxes of cookies from Girl Scouts and then aggressively threw them when instructed to return them; and spat on a picture hanging on the wall. Any one of these isolated incidents may not be enough to satisfy the requirements of the statute, but a conviction need not be based on only one isolated act. See *State* v. *Szymkiewicz*, supra, 237 Conn. 623. Because the cumulative force of the evidence leads to the conclusion that the defendant's conduct on the night of November 8, 2016 was physically tumultuous, we reject the defendant's claim that the state failed to produce sufficient evidence from which the jury reasonably could have concluded that the defendant was guilty of breach of the peace in the second degree.

### B

We next address the defendant's claim that the state's theory of criminal liability rendered § 53a-181 (a) (1) unconstitutionally vague as it was applied to him. Specifically, the defendant claims that his conviction of breach of the peace in the second degree should be overturned because "[t]he state chose to prosecute the

defendant on a theory of breach of [the] peace . . . fashioned by redacting from the . . . statute language that is needed in order to avoid constitutional infirmity." In response, the state argues that the defendant's claim must fail because "at the time of the offense, he reasonably understood that his behavior was prohibited by § 53a-181 (a) (1), and . . . [because] the evidence sufficiently established that [the defendant's] behavior amounted to breach of [the] peace under the statute." We agree with the state.

The long form information charging the defendant with breach of the peace in the second degree employed the following language: "[T]he state . . . accuses [the defendant] of breach of peace and charges that in the town of Bethel on or about November 8, 2016, [the defendant], with the intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, engaged in tumultuous behavior in a public place . . . in violation of [§ 53a-181 (a) (1)]." At trial, the court's charge to the jury as to the conduct element of § 53a-181 (a) (1), which reflected the language employed in the information, provided: "Element two, conduct. The second element is the defendant engaged in tumultuous behavior. The defendant's conduct must be more than a display of mere bad manners. It must cause or create a risk of causing inconvenience, annoyance or alarm among members of the public." Accordingly, both the state and the court removed language from § 53a-181 (a) (1), shortening the phrase "engages in fighting, or in violent, tumultuous or threatening behavior," to "engages in tumultuous behavior."

Before addressing the defendant's claim in full, we first set forth the applicable standard of review. "The determination of whether a statutory provision is unconstitutionally vague is a question of law over which we exercise de novo review. . . . In undertaking such review, we are mindful that [a] statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement." (Citation omitted; internal quotation marks omitted.) *State* v. *Winot*, 294 Conn. 753, 758–59, 988 A.2d 188 (2010). "The proper test for determining [whether] a statute is vague as applied is whether a reasonable person would have anticipated that the statute would apply to his or her particular conduct. . . . The test is objectively applied to the actor's conduct and judged by a reasonable person's reading of the statute. . . . If the language of a statute fails to provide definite notice of prohibited conduct, fair warning can be provided by prior judicial opinions involving the statute . . . or by an examination of

whether a person of ordinary intelligence would reasonably know what acts are permitted or prohibited by the use of his common sense and ordinary understanding." (Internal quotation marks omitted.) *State* v. *Lavigne*, 121 Conn. App. 190, 205–206, 995 A.2d 94 (2010), aff'd, 307 Conn. 592, 57 A.3d 332 (2012).

The defendant's claim is one of arbitrary and discriminatory enforcement, as he argues that "by redacting language from the . . . statute . . . the [state] . . . rendered § 53a-181 (a) (1) unconstitutionally vague as applied." This claim fails because the statute, as applied to the defendant, is not unconstitutionally vague. The proper test for claims of this nature was articulated previously as "whether a reasonable person would have anticipated that the statute would apply to his or her particular conduct." (Internal quotation marks omitted.) *State* v. *Lavigne*, supra, 121 Conn. App. 205. In the present case, there is no question that a reasonable person would anticipate that § 53a-181 (a) (1) would apply to the conduct of the defendant on the night of November 8, 2016, as described in part I A of this opinion. Accordingly, we reject the defendant's claim that § 53a-181 (a) (1) is unconstitutionally vague as it was applied to him.

C

We now turn to the defendant's claim that the trial court misled the jury by providing an inappropriate instruction with regard to the definition of "tumultuous behavior." Specifically, the defendant claims that "[b]y telling the jury that the conduct element [of breach of the peace in the second degree] required only that the jury find that the defendant engaged in 'tumultuous' behavior, the trial court did not provide the jury with a viable theory of liability under which the jury could properly convict the defendant." In response, the state argues that the defendant's claim in this regard is not reviewable because he "induced the alleged error or implicitly waived his unpreserved instructional error claim." In the alternative, the state claims that "the trial court's instruction was correct in law and sufficiently guided the jury [in deciding] whether the defendant committed breach of [the] peace under § 53a-181 (a) (1)." We conclude that the defendant implicitly waived his claim of instructional error.

At trial, the following exchange took place during the charging conference:

"The Court: [W]e begin with the charges, the amended information . . . breach of the peace in the second degree?

"[The Prosecutor]: There is something that the state has here, Your Honor. . . . In the charging document, the state's only making the claim that the defendant engaged in tumultuous behavior in a public place. . . .

"The Court: So, you're suggesting to excise 'fighting

or in violent,' those words?

"[The Prosecutor]: Yes and 'or threaten[ing] behavior.' And just leave . . . tumultuous behavior.

"The Court: [Defense counsel], so the proposal would read: Such person engages in tumultuous behavior in a public place.

"[Defense Counsel]: Your Honor, I . . . have no objection to the change. . . .

"The Court: So . . . the state's position is it should read: So that such person engages in tumultuous behavior in a public place?

"[The Prosecutor]: Correct.

"The Court: [Defense counsel].

"[Defense Counsel]: I have no objection to the change, Your Honor."

The following colloquy later took place regarding the specific language that the court would use when instructing the jury as to the conduct element of § 53a-181 (a) (1):

"[The Prosecutor]: [I]n the breach of peace statute . . . [the] element on conduct . . . says . . . that the defendant engaged in fighting, violent or tumultuous, threatening behavior. We had earlier . . . requested that the court take out all that language except for the tumultuous behavior language. Now, I find myself wondering if the tumultuous behavior has to be tumultuous behavior that actually involved physical violence or [portended] imminent physical violence . . . [s]o I'm not [going to] ask that that be removed. It creates a higher burden for the state . . . [but] I'm . . . worried about being reversed for charging inappropriately. . . . Does the court understand what I'm saying?

"The Court: I understand exactly what you're saying, and . . . if I remember right, we went over this and agreed that 'tumultuous' . . . would remain and everything else would come out.

"[Defense Counsel]: That's my recollection, Your Honor. . . .

"[The Prosecutor]: I just ask the court and [defense counsel] if either of you think that the tumultuous behavior also has to be tumultuous behavior that actually involved physical violence or [portended] imminent physical violence. . . . I don't want to excise something out of the charge that makes the charge bad. . . .

"The Court: Well, I think the actually involved physical violence or [portended] imminent physical violence, there's really nothing in the record that would suggest [the defendant] . . . [was] involved in any physical violence.

"[Defense Counsel]: I would agree with the court,

Your Honor. . . . [M]y recollection . . . was that [the prosecutor] had asked for that extra language to be removed . . . and I had no objection to it being removed."

The court, *Russo, J.*, then instructed the jury as follows: "Element one, intent. The first element is the defendant acted with the intent to cause inconvenience, annoyance or alarm. The predominant intent must be to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling, a vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm. A person can also be found guilty of breach of peace if he recklessly creates a risk of causing inconvenience, annoyance or alarm so that such person engages in tumultuous behavior in a public place. A person acts recklessly with respect to a result or circumstances when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstances exist. Element two, conduct. The second element is the defendant engaged in tumultuous behavior. The defendant's conduct must be more than a display of mere bad manners. It must cause or create a risk of causing inconvenience, annoyance or alarm among members of the public. Element three, public place. The third element is that the conduct took place in a public place. 'Public place' means any area that is used or held out for use by the public whether owned or operated by public or private interest. Conclusion. In summary, the state must prove beyond a reasonable doubt that the defendant, one, intended to cause or recklessly created a risk of causing inconvenience, annoyance or alarm; two, the defendant engaged in tumultuous behavior; and three, it was in a public place."

We first address the state's argument that the defendant's instructional error claim is not reviewable on appeal. Although the state claims that the defendant "induced the alleged error or implicitly waived his unpreserved instructional error claim," it primarily makes an argument of implicit waiver. Specifically, the state argues that the defendant implicitly waived his instructional error claim because "[he] played an active role along with the state in limiting the breach of peace instruction to 'tumultuous behavior' and acquiesced to the trial court's finding that there was no evidence of 'physical violence.' " The state also argues that the defendant "not only failed to object to the court's instruction as given, despite notice of the charge and the multiple discussions about it on the record, but also voiced his agreement with both the instruction as given and the trial court's finding that the evidence did not warrant instruction on the remaining statutory language." (Emphasis omitted.) We agree with the state that the defendant implicitly waived his claim of instruc-

tional error.

"It is well established . . . that unpreserved claims of improper jury instructions are reviewable under [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)] unless they have been induced or implicitly waived. . . . [W]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy. . . . Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim [under *Golding*]. . . . Both [our Supreme Court] and [this court] have found implied waiver on grounds broader than those required for a finding of induced error. These include counsel's failure to take exception or object to the instructions together with (1) acquiescence in, or expressed satisfaction with, the instructions following an opportunity to review them, or (2) references at trial to the underlying issue consistent with acceptance of the instructions ultimately given. . . . The rationale for declining to review jury instruction claims when the instructional error was induced or the claim was implicitly waived is precisely the same: [T]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to . . . ambush the state [and the trial court] with that claim on appeal." (Citations omitted; internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 468–70, 10 A.3d 942 (2011).

We conclude that the defendant has implicitly waived his instructional error claim. The record indicates that defense counsel had an opportunity to review the jury charge language, and that he acquiesced in the use of the instructional language at issue. In fact, defense counsel clearly stated that he had no objection to the removal of the language now challenged by the defendant, and actually expressed agreement with the court's use of that limited language over the state's suggestion, in a reconsideration of its prior request, that the language of the statute be used in its entirety. For these reasons, reviewing the defendant's claim of instructional error on the merits would be in contravention of the principle of implicit waiver, as it would allow the defendant to challenge his failed trial strategy on appeal. See id., 470. Accordingly, we conclude that this claim has been implicitly waived.

Having reached this conclusion, we now address the defendant's claim that "the trial court's jury charge requires reversal as plain error." In support of his claim of plain error, the defendant asserts that "[t]here is a reasonable possibility that the jury convicted [him] for 'bad manners' but not conduct that portended imminent physical violence." Specifically, the defendant claims that "[an] error here is plain upon the face of the record . . . [because] the jury was left to its own understanding of the word 'tumultuous' and was deprived of the judicial interpretations of the conduct element that are necessary to prevent arbitrary enforcement of the breach of [the] peace statute." We disagree.

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record. Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . [Previously], [our Supreme Court has] described the two-pronged nature of the plain error doctrine: [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice. . . . It is axiomatic that, [t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly reserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . Put another way, plain error review is reserved for only the most egregious errors. When an error of such a magnitude exists, it necessitates reversal." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812–14, 155 A.3d 209 (2017).

We turn to the first prong of the plain error doctrine, namely, whether the trial court's decision to remove language from the conduct element of the breach of

the peace statute in its charge to the jury, is so clear an error that a failure to reverse the judgment would result in manifest injustice. See id., 812. The defendant's claim in this regard hinges on his assertion that "[t]here is a reasonable possibility that the jury convicted [him] for 'bad manners' but not conduct that portended imminent physical violence." Considering the record in its entirety, we conclude that no such reasonable possibility exists, and that the trial court's instruction to the jury does not constitute a clear error. In charging the jury as to the conduct element of § 53a-181 (a) (1), the court specifically defined tumultuous as follows: "The defendant's conduct *must be more than a display of mere bad manners*. It must cause or create a risk of causing inconvenience, annoyance or alarm among members of the public." (Emphasis added.) This language used by the court shows that no clear error exists with regard to the court's instructions, as the court expressly stated that the defendant's conduct "must be more than . . . mere bad manners." Accordingly, we conclude that the defendant is not entitled to relief under the doctrine of plain error.

## II

The defendant challenges his conviction of assault of public safety personnel on the following grounds: the state did not offer sufficient evidence to prove that Sergeant Christos was acting lawfully in the performance of his official duties, and the court failed to instruct the jury adequately on the law governing police discretion to issue and serve a summons on an individual who has not yet been arrested. We address each claim in turn.

## A

We first address the defendant's claim that the state did not offer sufficient evidence to prove that Sergeant Christos was acting lawfully in the performance of his official duties. Specifically, the defendant claims that "[i]n the absence of an actual arrest, law enforcement officers do not have statutory authority to issue a summons," and that "the police lacked 'speedy information' to arrest the defendant for his . . . past behavior." We disagree.

We begin by setting forth the applicable standard of review. As noted in part I A of this opinion, a two part test applies to claims of insufficient evidence. First, we construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Allen*, supra, 289 Conn. 555–56. Second, we determine whether, based upon the facts so construed and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the evidence before it established guilt beyond a reasonable doubt. Id., 556. Because such review involves statutory construction—a question of law—our review is plenary. *State* v. *Carolina*, supra, 143

The statute at issue—§ 53a-167c (a) (5)—provides in relevant part: "A person is guilty of assault of public safety . . . personnel . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties . . . such person throws or hurls, or causes to be thrown or hurled, any bodily fluid including . . . saliva at such peace officer." Accordingly, the defendant's claim—that the state did not offer sufficient evidence to prove that Sergeant Christos was acting lawfully in the performance of his official duties—focuses solely on the requirement of § 53a-167c (a) (5) that the officer must be "acting in the performance of his or her duties" at the time of the assault. The defendant claims that the state failed to offer sufficient evidence to prove that, under the circumstances, Sergeant Christos had statutory authority to issue a summons to the defendant. Specifically, the defendant cites General Statutes §§ 54-1h[3] and 54-1f[4] to support the claim that "[t]he state failed to prove that [Sergeant Christos] [was] operating within [his] legal authority when [he] confronted the defendant at his home and attempted to serve [the] . . . summons upon him." Accordingly, the defendant's claim can be broken down as follows: Sergeant Christos lacked authority to serve a summons upon the defendant on the morning of November 9, 2016, and therefore was not "acting in the performance of his . . . duties," as is required by § 53a-167c (a) (5). We disagree.

The question of "[w]hether [an officer] is acting in the performance of his duty within the meaning of . . . [§ 53a-167c (a)][5] must be determined in the light of that purpose and duty. If he is acting under a good faith belief that he is carrying out that duty, and if his actions are reasonably designed to that end, he is acting in the performance of his duties. . . . The phrase in the performance of his official duties means that the police officer is simply acting within the scope of what [he] is employed to do. The test is whether the [police officer] is acting within that compass or is engaging in a personal frolic of his own. . . . [W]hether the police officer was acting in the performance of his official duties or engaging in a personal frolic [are] factual questions for the jury to determine on the basis of all the circumstances of the case and under appropriate instructions from the court." (Citation omitted; footnote added; internal quotation marks omitted.) *State* v. *Davis*, 261 Conn. 553, 566, 804 A.2d 781 (2002). Accordingly, the question before us is not, as the defendant suggests, whether Sergeant Christos had the authority to serve a summons upon the defendant but, rather, whether Sergeant Christos was "acting within the scope of what [he] is employed to do." (Internal quotation marks omitted.) Id. There is clear evidence in the record from which the jury reasonably could have concluded

that Sergeant Christos was acting within the scope of his employment, and was not engaged in a personal frolic, when he served the summons upon the defendant. Sergeant Christos was on duty and in uniform on November 9, 2016, and, on the basis of that fact, the jury reasonably could have concluded that his decision to accompany Officer Broad to the home of the defendant and to issue the summons himself was made in his official capacity as a police officer and as Officer Broad's supervisor, as Officer Broad was not in uniform, and Sergeant Christos believed that because he "would be readily identifiable as a police officer, there would be no question as to who was taking the action . . . ." For these reasons, we conclude that the state offered sufficient evidence from which the jury reasonably could have concluded that Sergeant Christos was acting within the scope of his employment.

## B

We now address the defendant's final claim—that the court failed to instruct the jury adequately on the law governing police discretion to issue and serve a summons on an individual who has not yet been arrested. Specifically, the defendant claims that "[t]he trial court's failure to respond adequately to the jury's . . . request for clarification . . . deprived the defendant of his right to a fair trial by jury." According to the defendant, "the jury needed to be instructed on the law governing police discretion to issue and serve a summons [upon] an individual who has not been arrested first." In response, the state argues that "the defendant implicitly waived this instructional error claim." In the alternative, the state argues that "the trial court properly instructed the jury on the elements of the assault [of a public safety officer] charge."

At trial, the court provided the following instruction to the jury regarding the charge of assault of a public safety officer: "Element one, assault of officer. The first element is that the person allegedly assaulted was a reasonably identifiable public safety officer. The standard is whether a reasonable person under the same circumstances should have identified the other person as a public safety officer. In determining this, such facts as whether the other person wore a uniform, whether he identified himself or showed his badge or other identification or the manner in which he acted and conducted himself, are all relevant to your decision of whether that person was reasonably identifiable as a public safety officer. It is irrelevant whether the public safety officer was officially on duty at the time of the attempted arrest as long as he was identifiable as a public safety officer. Element two, in the performance of his duties. The second element is that the conduct of the defendant occurred while the public safety officer was acting in the performance of his duties. The phrase 'in the performance of his official duties,' means that

the public safety officer was acting within the scope of what he is employed to do and that his conduct was related to his official duties. The question of whether he was acting in good faith in the performance of his duties, is a factual question for you to determine on the basis of the evidence in the case. Element three, intent to prevent the performance of his duties. The third element is that the defendant had the specific intent to prevent the public safety officer from performing his lawful duties. A person acts intentionally with respect to a result, when his conscious objective is to cause such result. Element four, by certain means. The fourth element is that the defendant threw or hurled or caused to be thrown or hurled any bodily fluid, including but not limited to, saliva, at [Sergeant] Christos. Conclusion. In summary, the state must prove beyond a reasonable doubt that, one, the defendant assaulted a public safety officer; two, in the performance of his duties; three, with the intent to prevent the performance of his duties; and, four, by means of throwing or hurling or causing to be thrown or hurled any bodily fluid, including but not limited to saliva, at [Sergeant] Christos."

During its deliberations, the jury wrote a note requesting clarification from the court with regard to the charge of assault of a public safety officer: "Can we have clarification as to when an officer's duties end? (This in reference to the charge of an assault on an officer)." The court informed both the state and defense counsel of the existence of the note and, after discussing its contents, all parties agreed that the jury charge as given by the court could not be expanded upon or embellished. The court responded to the request by explaining to the jury: "The answer lies in your deliberations. That's a factual finding that you will deliberate upon. . . . [T]here are a few things that can assist you in that; the testimony of the individuals involved and the court's jury charge to you. You work within that framework, within that context, and through your deliberations you will arrive at an answer to that question."

We first address the state's argument that the defendant's instructional error claim is not reviewable on appeal. Specifically, the state argues that "[t]he defendant implicitly waived his unpreserved claim that the court erred by failing to instruct the jury on the speedy information issue in response to the jury's note . . . [because] [he] was clearly on notice of the speedy information issue . . . but chose not to raise that issue in the context of the court's instruction on the assault charge, despite the jury's note on that specific charge." According to the state, the defendant "[i]nstead . . . agreed with the court's proposed response . . . and . . . voiced no objection when the court issued its response." We agree with the state that the defendant implicitly waived his claim of instructional error.

As set forth in part I C of this opinion, unpreserved claims of instructional error are reviewable under *Golding*, unless they have been induced or implicitly waived by the defendant. *State* v. *Kitchens*, supra, 299 Conn. 468. "Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim [under *Golding*]." (Internal quotation marks omitted.) Id., 469. More specifically, a defendant has waived his instructional error claim if he has failed to take exception with or object to the instructions at issue, and also has acquiesced in the court's use of the instructions after having had the opportunity to review them. Id., 469–70.

In the present case, it is clear that the defendant has implicitly waived his claim of instructional error. The record shows that defense counsel had the opportunity to review the jury instructions, and that he did not object to them. Furthermore, defense counsel was given the opportunity to consider the question posited to the court by the jury, and he clearly acquiesced in the court's charge to the jury by agreeing that the instructions already given were sufficient. For these reasons, we conclude that the defendant has implicitly waived his instructional error claim.[6]

Having reached this conclusion, we now turn to the defendant's claim that he is entitled to a new trial because the court's jury charge requires reversal as plain error. Specifically, the defendant claims that "[i]f the jury had been informed that [the] law of arrest required the police to apply for a warrant before going to the defendant's home to confront him . . . [t]here is a reasonable possibility that the jury would have concluded that [Sergeant] Christos, when spat upon, was not performing his lawful duty and the jury [therefore] would have acquitted."

As established in part I C of this opinion, the plain error doctrine consists of two prongs: "[An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis in original; internal quotation marks omitted.) *State* v. *McClain*, supra, 324 Conn. 812.

We turn to the first prong of the plain error doctrine, namely, whether the trial court's decision not to inform the jury "that [the] law of arrest required the police to apply for a warrant before going to the defendant's home to confront him" is so clear an error that a failure to reverse the judgment would result in manifest injustice. See id., 812. The defendant's claim in this regard is dependent on his assertion that if the jury was instructed as to the law of arrest, "[t]here is a reasonable

possibility that the jury would have concluded that [Sergeant] Christos . . . was not performing his lawful duty and . . . would have acquitted." Considering the record in its entirety, we conclude that no such reasonable possibility exists. As we concluded in part II A of this opinion, whether a police officer has lawful authority to conduct an arrest or serve a summons is irrelevant to the question of whether that officer is acting in the performance of his duties. This means that no clear error occurred because, even if the court had provided this instruction to the jury, it would not have changed the question before the jury or the factors that the jury could consider in determining whether Sergeant Christos was acting in good faith in the performance of his duties. Accordingly, we conclude that the defendant is not entitled to relief under the doctrine of plain error.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ."

[2] Although *Indrisano* and *Szymkiewicz* both involve charges of disorderly conduct, as opposed to charges of breach of the peace, they are still applicable to the present case because "[t]he elements of the two statutes are identical, except that § 53a-181 (a) (1) . . . concerns behavior in a public place." *State* v. *Szymkiewicz*, supra, 237 Conn. 618.

[3] The specific language of the statute on which the defendant relies is: "Any person who has been arrested with or without a warrant for commission of a misdemeanor . . . may, in the discretion of the arresting officer, be issued a written complaint and summons and be released on his written promise to appear on a date and time specified." General Statutes § 54-1h. The defendant also cites Practice Book § 36-4 (Direction by Judicial Authority for Use of Summons) and Practice Book § 36-8 (Issuance of Summons by Prosecuting Authority in Lieu of Arrest Warrant) in support of this claim.

[4] General Statutes § 54-1f (a) provides in relevant part: "Peace officers . . . shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended . . . on the speedy information of others . . . ."

[5] Although our Supreme Court, in setting forth this standard, was referring to General Statutes § 53a-167a (a); *State* v. *Davis*, 261 Conn. 553, 566, 804 A.2d 781 (2002); its analysis is equally applicable to § 53a-167c (a). See id., 567.

[6] Notwithstanding this conclusion, even if the defendant's claim of instructional error was reviewable on the merits, it did not warrant a reversal of the judgment of the trial court because there is virtually no possibility that the jury was misled by the instruction at issue.